**RITZEL COMMUNICATIONS, INC., Plaintiff,**

v.

**MID–AMERICAN CELLULAR TELEPHONE COMPANY, a Kansas Corporation; Mac–Tel Co., a Kansas Corporation; Alton Cellular, Inc., a Missouri Corporation, Defendants.**

**Mid–American Cellular Telephone Company; Third Party-plaintiff-Appellee,**

**Barclay Robert Goodwin, Jr.; Steven L. Johnson; Emmett M. Capper; D.C. Taylor; Tina M. Green; B & R Communications, c/o Richard N. Brown; Appollo Communications; Channel Communication, c/o Ted and Delores Landkammer, Third Party-defendant-Appellants.**

**No. 91–3212.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 2, 1992.

Decided March 30, 1993.

Rehearing and Rehearing En Banc Denied May 19, 1993.

---

Frederick H. Riesmeyer, Kansas City, MO, argued, (J. Dale Youngs, on the brief), for appellants.

Mark D. Murphey, Kansas City, MO, argued (James Lieber, on the brief) for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Barclay Robert Goodwin, Jr. and several associates [1] appeal from the district court's denial of their motion to stay litigation and compel arbitration. While this appeal was pending, the Goodwin group proceeded to try the case in the district court. We now determine that by continuing to litigate in the district court and by failing to seek a stay of the district court proceedings from this court or to otherwise expedite the appeal, the Goodwin group waived any right to arbitrate the purchase and sale agreement.

In March 1990, Mid–American Cellular Telephone Company sold one of its wholly-owned subsidiaries, Alton Cellular, Inc., to the Goodwin group of investors. The terms of the sale are contained in the "Stock Purchase Agreement" dated March 20, 1990.

On October 11, 1990, Ritzel Communications, Inc., the broker involved in the sale, sued Mid–American for recovery of a broker's fee. Mid–American's defense was that the sale to the Goodwin group had never been completed. On November 20, 1990, Mid–American moved to add members of the Goodwin group as additional parties needed for adjudication of the claims, and this motion was granted March 12, 1991. Mid–American named members of the Goodwin group as additional parties and, on March 27, 1991, Mid American filed a cross claim against the group. The district court later termed these filings a third-party complaint. On May 10, 1991,

---

1. The Goodwin group consists of Barclay R. Goodwin, Jr., Steven L. Johnson, Emmett M. Capper, D.C. Taylor, Tina M. Green, B & R Communications, Appollo Communications, and Channel Communications.

the Goodwin group filed a motion to dismiss the cross-claim of Mid–American and an alternative motion for a separate trial.

On June 28, 1991, the Goodwin group filed a motion to stay litigation and to compel arbitration based on cross indemnification agreements contained in the Stock Purchase Agreement. The district court, denied the motion, concluding that arbitration under the Agreement was elective, not mandatory.[2] The Goodwin group appealed.

While this appeal was pending, the group continued to litigate in the district court. On November 5, 1991, it filed an answer to Mid–American's cross-claim and its own amended counterclaim. It responded to interrogatories and requests for production, participated in the deposition of A. Lawrence Summers, and actively opposed the deposition of Barclay Robert Goodwin. The group participated in pre-trial conferences (including a settlement conference at which Ritzel and Mid–American settled) and filed numerous motions and documents in preparation for trial.[3] Eventually, the parties tried the case in a six-day bench trial which ended on June 3, 1992.

In this court, the Goodwin group twice requested and received extensions of time to file briefs. Under the original schedule, the briefing would have been completed by January 6, 1992. The group, however, obtained an extension of time to file its brief (originally due November 22), and filed its twelve-page brief on December 24. Mid–American obtained two extensions, totalling thirty days, to file its brief. The Goodwin group then obtained an extension to file a reply brief and filed its seven-page brief on March 17, 1992.

Until oral argument, the Goodwin group made no request to this court to expedite

the appeal or to stay the proceedings in the district court. We heard argument on June 12, 1992, shortly after the completion of the trial in the district court, but before the district court had entered judgment and issued its findings of fact and conclusions of law. We then held the appeal in abeyance until the district court issued its final order.

On July 29, 1992, the Goodwin group filed a motion in this court requesting that proceedings in the district court be stayed pending our decision. The Goodwin group argued that because a decision by this court in its favor (i.e., upholding Goodwin's right to arbitrate) would vacate any order of the district court, concern for judicial economy justified the stay. We denied this motion.

In late November, we received a certified copy of the district court's order entering judgment against the Goodwin group, and requested additional briefing on the question of whether the Goodwin group had waived its right to arbitrate by continuing to litigate in the district court. For purposes of this appeal, we assume, without deciding, that the Goodwin group had a right to demand arbitration.

The issue before us then is whether the Goodwin group has waived its right of arbitration by proceeding to trial in the district court, by failing to raise the arbitration issue before this court in a motion either to expedite the appeal or to stay proceedings in the district court, and by delaying its filings in this court. We conclude that the group has waived its arbitration rights.

■ In light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be

---

**2.** The Goodwin group repeatedly "renewed" to the district court its demand for arbitration in subsequent pleadings. Specifically, it requested arbitration in a September 24, 1991, motion to stay proceedings pending appeal and to stay litigation and compel arbitration, in a November 12, 1991, motion to dismiss the cross-claim, and in a December 4, 1991, motion to refer certain factual and legal issues to arbitration. The district court denied all of these motions without comment.

**3.** These included amended pleadings, statements of factual and legal issues to be presented at trial, proposed findings of fact and conclusions of law, witness lists, exhibit lists, designation by the Goodwin group of deposition testimony of A. Lawrence Summers with objections filed by Mid–American, a stipulation as to identification and foundation of exhibits, revisions of these filings, various motions to amend pleadings, and a motion in limine filed by the Goodwin group.

resolved in favor of arbitration. *Nesslage v. York Sec., Inc.,* 823 F.2d 231, 234 (8th Cir.1987). Nevertheless, we will find waiver where the party claiming the right to arbitrate: (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts. *Stifel, Nicolaus & Co. v. Freeman,* 924 F.2d 157, 158 (8th Cir.1991).

The Goodwin group drafted the Stock Purchase agreement that contains the arbitration provisions, and thus knew of the existing right of arbitration. We must determine whether the Goodwin group acted inconsistently with its right to arbitrate and so prejudiced Mid–American.[4]

We have considered similar "inconsistent action" questions in three previous cases. In *N & D Fashions, Inc. v. DHJ Industries,* 548 F.2d 722, 728 (8th Cir.1976), we concluded that there had been no waiver when a party responded to the filing of a suit by immediately demanding arbitration and by requesting a stay of proceedings in the district court. In *Nesslage v. York Securities,* we affirmed a district court finding of no waiver when a party did not assert its arbitration rights until after the filing of a relevant Supreme Court decision, and when discovery was limited to issues the Supreme Court held to be arbitrable. 823 F.2d at 234. Finally, in *Stifel,* we reviewed a waiver question de novo[5] and concluded that the party requesting arbitration had acted inconsistently with its right to arbitrate by initiating litigation and participating in discovery. 924 F.2d at 158. We found no waiver, however, because these inconsistent acts did not prejudice the other parties: "No issues were litigated

and the limited discovery conducted will be usable in arbitration." *Id.* at 159.

The facts before us, distinguishable from those of the cases just cited, convince us that the Goodwin group acted inconsistently with its right to arbitrate. First, the group "[s]ubstantially invoke[d] the litigation machinery" before asserting its arbitration right. *E.C. Ernst, Inc. v. Manhattan Const. Co.,* 559 F.2d 268, 269 (5th Cir.1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978).

Mid–American filed its crossclaim against the Goodwin group on March 27, 1991. The Goodwin group's first response was not to demand arbitration, but to file (on May 10, 1991) a motion to dismiss, or in the alternative, to sever the cross-claim for a separate trial. The group's motion argued that it was improper for the group to be a party, that Mid–American had failed to join necessary parties, and that Mid–American had failed to state a claim with respect to Count III (a request for an accounting). Thus, before asserting the intent to arbitrate (on June 28, 1991), the group submitted the dispute to the court for resolution by either court order or a trial.

The motion for dismissal represents a substantial, active invocation of the litigation process. With this motion, the group initiated steps in the litigation and required responsive actions by Mid–American rather than immediately demanding arbitration. Moreover, the alternative motion is even more inconsistent with the arbitration rights; in essence, the Goodwin group requested a trial.[6]

We think the Goodwin group's actions here resemble those described in two cases

---

4. The issues actually tried in the district court were the same issues that would have been subject to arbitration.

5. Although Mid–American raised the waiver issue in the district court, the court did not reach the issue because it denied arbitration on the basis of the contract language. Other circuits have considered the question of waiver, even though the district court had not ruled on it. *See, e.g., S & H Contractors v. A.J. Taft Coal Co.,* 906 F.2d 1507, 1514 (11th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 677, 112 L.Ed.2d 669 (1991).

6. This initial choice to litigate distinguishes the present case from these on which the Goodwin group chiefly relies. *See Britton v. Co-op Banking Group,* 916 F.2d 1405 (9th Cir.1990) (pro se party pursues informal settlement before seeking arbitration and actively resisted discovery after arbitration motion denied); *Sibley v. Tandy Corp.,* 543 F.2d 540 (5th Cir.1976) (motion to stay filed simultaneously with answer), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977).

where other circuit courts found a waiver. In *S & H Contractors*, 906 F.2d at 1514, a party waived its arbitration rights by filing a motion to dismiss, opposing discovery, and taking the depositions of five of its opponent's employees. In the present case, we have less pretrial discovery activity, but do have the group's additional inconsistent acts of intentional delay and failure to expedite the appeal, which may have led to an unnecessary six-day trial on the merits.

In *St. Mary's Medical Center v. Disco Aluminum Products*, 969 F.2d 585, 587 (7th Cir.1992), a party waited ten months before asserting its arbitration rights and, in the interim, filed a motion to dismiss and an alternative motion for summary judgment. The Seventh Circuit concluded that the delay and the submission of the case by filing the motion to dismiss were inconsistent with the desire to arbitrate. *Id.* at 589. The court also stressed the alternative motion for summary judgment. *Id.* The Seventh Circuit recognized that waiver depends on the circumstance of each case. *Id.* at 588. Although the Goodwin group did not engage in the same long delay in asserting its arbitration rights, the filing of motions directed to the merits is similar.

In addition, the group's conduct in this court is inconsistent with arbitration rights. By failing to request a stay in this court or to move to expedite the appeal and by delaying the process of appeal so that oral argument did not occur until after the trial on the merits in the district court, the group squandered the economies of arbitration and gave the appearance of having no sincere interest in avoiding litigation of the dispute.

The Goodwin group argues that its reassertion of arbitration rights in the district court was sufficient and it did not have to pursue "voluntary" and "extraordinary" remedies in this court.[7] The group portrays itself as helplessly swept along towards trial, bound by its obedience to the orders of the district court. These arguments are unpersuasive.

First, there is nothing extraordinary about asking this court to stay proceedings in the district court. We have, on numerous occasions, entertained motions to stay proceedings in the district court pending appeal of a district court's determination of arbitrability.[8] *See, e.g., Flink v. Carlson*, 856 F.2d 44, 47 (8th Cir.1988); *Cox v. Piper, Jaffray & Hopwood, Inc.*, 848 F.2d 842, 843 (8th Cir.1988); *Brotherhood of Painters v. Lord & Burnham Constr. Corp.*, 705 F.2d 998, 999 n. 1 (8th Cir.1983); *see also S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97 (8th Cir.) (granting oral argument on a motion for a stay of arbitration pending appeal), *cert. denied*, —— U.S. ——, 113 S.Ct. 184, 121 L.Ed.2d 129 (1992).

Arbitration clauses in agreements are designed to resolve disputes without costly litigation. When a party appealing the denial of its arbitration rights ignores the available means to avoid wasteful litigation pending appeal, it is acting inconsistently with those rights. By failing to make the simple effort of requesting a stay in this court and by proceeding to trial on the merits in the district court, the Goodwin group defeated the whole purpose of the arbitration clause on which it claims to rely. After filing its notice of appeal in this court, the Goodwin group briefed its case in a leisurely fashion and allowed the appeal to proceed toward oral argument without notifying this court that trial was imminent.[9] Had a motion to stay been filed in this court or had the court been informed of the impending trial, it is highly likely that some decision could have been made to prevent the procedural situation we now face; namely, an assertion to compel arbitration after both parties have gone

---

**7.** The cases cited by the Goodwin group do not support the proposition that it can never be necessary to take "voluntary" actions to avoid waiver.

**8.** While not requiring that parties denied a stay in the district court seek one in the Court of Appeals, this sequence of events is clearly recognized in Federal Rule of Appellate Procedure 8(a).

**9.** It was only in a motion to dismiss the appeal, filed by Mid–American two days before argument, that this court learned for the first time that there had already been a trial on the merits in the district court.

through the trouble and expense of a full trial.

Further, the Goodwin group's own actions delayed completion of the briefing on appeal. Had briefing been concluded on schedule in early January, it is likely that the case would have been set for argument in April. Significantly, the Goodwin group's short briefs hardly justify the forty-day extension of time sought. The failure to promptly brief the case and to give notice of the trial is inconsistent with the Goodwin group's arbitration rights.

The prejudice to Mid–American is obvious and substantial. The trial involved four days devoted to presenting Mid–American's case. Mid–American called five witnesses, recalling one to the stand on three additional occasions. The Goodwin group presented its testimony in a full day of trial, calling three witnesses, and twice recalling a Mid–American witness. Closing arguments consumed a sixth trial day. Needless to say, a flurry of costly and time-consuming filings required by court order preceded the trial.[10]

When we heard argument in this appeal, the trial was complete but the district court had not yet rendered its decision. The parties informed us at argument that the district court had indicated it would probably issue its decision by mid-July or early August at the latest. In this posture, we deemed it appropriate to hold our proceedings in abeyance until the district court issued its final order. We reasoned that, should the district court decide the issues in favor of the Goodwin group, the appeal could well be moot. At that point, the costs and expense of trial had been incurred. It was not until July 29, 1992, however, that the Goodwin group filed a motion arguing judicial economy and requesting that we lift our order, and stay the proceedings in the district court. We denied this motion. After a full trial in the district court and an argument on the appeal, the group's professed concern for judicial economy was hollow. The Goodwin group, having allowed the trial to proceed, would have been content with a decision in its favor in the district court and, if it lost there, would seek a second bite at the apple through its interlocutory appeal. This fact only underscores our conclusion that the Goodwin group acted in a manner inconsistent with any contractual arbitration rights that it might have possessed.

Whether there is waiver depends on the particular facts before us. After examining all the circumstances, we conclude that because the Goodwin group substantially opted for litigation before asserting its arbitration rights, ignored every clear means of either expediting its appeal or staying the district court proceedings, and fully tried its case, the Goodwin group acted inconsistently with its arbitration rights. We hold that the Goodwin group waived its right to arbitration, and therefore, dismiss the present appeal.